**Earl Wayne PIERCE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–94–526–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 8, 1996.

Randy Mack, Corpus Christi, for appellant.

Carlos Valdez, District Attorney, Adolfo Aguilo, Jr., Asst. District Attorney, Corpus Christi, for appellee.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury convicted appellant, Earl Wayne Pierce, of aggravated sexual assault of a child and assessed punishment at nine years' confinement and a $10,000 fine. Upon the recommendation of the jury, the trial court suspended the sentence and placed appellant on community supervision for nine years. Appellant raises three points of error. We

reverse the judgment of the trial court and order the prosecution of this case dismissed.

On or about August 11, 1987, the victim claimed that appellant, a live in boyfriend of the victim's mother, touched his mouth to her vagina. The incident was reported to Child Protective Services ("CPS") and appellant was interviewed by a CPS investigator on August 15, 1987. Appellant was not arrested after this interview.[1] Shortly thereafter, appellant and the victim's mother moved together to Houston, Texas. On October 26, 1987, CPS sent the victim's mother a letter informing her that the case was closed and that no further contact would occur. On May 27, 1988, a Nueces County grand jury indicted appellant for aggravated sexual assault of a child. In June 1994, appellant was arrested in Houston when he went to renew his driver's license. Trial counsel was appointed in August 1994. On September 2, 1994, appellant filed a motion to dismiss because his right to a speedy trial, under both federal and state constitutions, had been violated.

By his first point of error, appellant complains that the trial court erred in failing to grant his motion to dismiss because his right to a speedy trial, under both federal and state constitutions, was denied. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10.

The following balancing test, weighing the conduct of the prosecution and the accused, has been developed by the United States Supreme Court to determine whether an accused has been denied a speedy trial:

1) the length of the delay,

2) the reason for the delay,

3) the defendant's assertion of his speedy trial right, and

4) prejudice to the defendant from the delay.

*Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker,* the Supreme Court stated:

the rule we announce today, which comports with constitutional principles, places

---

1. Appellant was not arrested until June 1994.

the primary burden on the courts and the prosecutors to assure that cases are brought to trial.

*Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. Although the constitutional speedy trial rights of Texas and the United States are independent, Texas courts look to the federal courts in determining state constitutional rights. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *State v. Empak, Inc.,* 889 S.W.2d 618, 621 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Texas uses the *Barker* balancing test to determine whether a defendant has been denied his state speedy trial right. *Harris,* 827 S.W.2d at 956.

We will apply the *Barker* balancing test to determine whether appellant has been denied his right to a speedy trial under both federal and state constitutions.

### Length Of The Delay

■ The delay in commencement of the trial must be of sufficient length to be presumptively prejudicial before a review of the remaining three factors is triggered. *Barker,* 407 U.S. at 531 n. 31, 92 S.Ct. at 2192 n. 31. The length of delay is measured from the time of arrest or formal accusation. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Harris,* 827 S.W.2d at 956. Most delays of eight months or longer are considered presumptively unreasonable and prejudicial. *Marion,* 404 U.S. at 313, 92 S.Ct. at 459; *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992); *Harris,* 827 S.W.2d at 956.

■ On May 27, 1988, appellant was indicted for aggravated sexual assault of a child. The indictment alleges that the sexual assault took place on or about August 11, 1987. Appellant's trial commenced on October 10, 1994. We consider a six year delay between indictment and trial to be presumptively unreasonable and prejudicial. Thus, we review the remaining three factors.

### Reason For The Delay

■ It is the State's burden to establish an excuse for the delay. *Empak,* 889 S.W.2d at 624; *State v. Hernandez,* 830 S.W.2d 631, 634 (Tex.App.—San Antonio 1992, no pet.). The State's negligence, however innocent, militates against the State. *Empak,* 889 S.W.2d at 624; *Branscum v. State,* 750 S.W.2d 892, 895 (Tex.App.—Amarillo 1988, no pet.).

■ Appellant moved to Houston shortly after the assault, leaving no forwarding address. The State, however, had an address for appellant's stepfather in Houston. On June 2, 1988, Nueces County issued and forwarded to Harris County an arrest warrant listing the stepfather's address as appellant's residence. At the same time, the warrant was entered into county, state (Texas Crime Information Center), and national (National Crime Information Center) computers. Testimony from Lucy Reyes, custodian of records from the Warrants Division of the Nueces County Sheriff's Office, indicated that there was no recorded attempt to serve the warrant at the Houston address. However, the State did mail a scheduling or arraignment sheet to appellant at the stepfather's address on June 8, 1988.

Appellant testified that he resided at his stepfather's address on the date the warrant was issued and on the date the scheduling sheet was mailed. He further testified that he had no knowledge of the scheduling sheet and that no one ever approached him or his parents attempting to serve the arrest warrant.

The uncontroverted testimony shows that appellant used his real name, social security number, and birth date at all times while residing in Houston. Appellant was stopped by Houston police for traffic violations on two separate occasions after the warrant was issued and listed in the TCIC and NCIC computers. After appellant failed to pay one of the tickets, a police officer contacted him and told him that a warrant would be issued for his arrest if he did not pay the ticket. In 1992, appellant renewed his driver's license with no difficulty. Finally, in June 1994, appellant was arrested when he again went to renew his driver's license.

The State could not explain why Harris County failed to serve the arrest warrant after it was issued on June 2, 1988. Other than listing the arrest warrant in the TCIC and NCIC computers and mailing the scheduling or arraignment sheet, there is no indication in the record that Nueces County looked for appellant. Because the State failed to establish an excuse for the delay, we conclude that this factor favors appellant.

### Defendant's Assertion Of His Speedy Trial Right

■ An appellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial. *Harris,* 827 S.W.2d at 957.

The State contends that appellant knew charges were pending against him because in September 1987, he gave CPS a statement. During the pre-trial hearing on the motion to dismiss, the State offered no other evidence that appellant knew of the indictment during the six-year period at issue.

The record reflects that appellant was not arrested after the September 1987 interview.[2] Shortly after the interview, appellant and the victim's mother moved together to Houston. On October 26, 1987, CPS sent the victim's mother a letter informing her that the case was closed and that no further contact would occur. Appellant was not indicted until May 27, 1988, some eight months after his interview with the CPS investigator. Appellant testified that he was not aware that charges were pending against him in Nueces County until he was arrested in June 1994. In August 1994, trial counsel was appointed, and appellant filed his speedy trial motion on September 2, 1994.

■ Without evidence that appellant actually knew of the indictment prior to his arrest in June 1994, he cannot be penalized for invoking his speedy trial right only after arrest. *See Doggett,* 505 U.S. at 652, 112 S.Ct. at 2691. We conclude that this factor also favors appellant.

### Prejudice To The Defendant From The Delay

■ A defendant who invokes his right to a speedy trial is required to make some showing that the delay has been prejudicial. *Chapman v. Evans,* 744 S.W.2d 133, 137 (Tex.Crim.App.1988); *Phillips v. State,* 650 S.W.2d 396, 401 (Tex.Crim.App.1983). "Prejudice ... should be assessed in the light of the [following] interests ... which the speedy trial right was designed to protect[:] (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Because he was not aware of the indictment and because he remained free during the six-year period, appellant cannot rely on the first two interests to establish prejudice.

■ The speedy trial inquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that *Barker* recognized. *Doggett,* 505 U.S. at 653, 112 S.Ct. at 2692. Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter identify. *Id.* at 655, 112 S.Ct. at 2693; *Empak,* 889 S.W.2d at 625.

■ *Barker* was modified with respect to the prejudice factor by *Doggett* which provided that, under certain fact situations, the State's egregious persistence in failing to prosecute the defendant was sufficient to warrant relief even without a showing of actual prejudice. 505 U.S. at 655, 112 S.Ct. at 2693; *Traylor v. State,* 892 S.W.2d 447, 449 (Tex.App.—Beaumont 1995, pet. ref'd). *Barker* and *Doggett* recognize that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. *Doggett,* 505 U.S. at 655–56, 112 S.Ct. at 2693; *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Traylor,* 892 S.W.2d at 450. *Doggett* further recognizes that when proof of specific prejudice is absent, presumptive prejudice may, in proper combination with the other *Barker* factors, carry a defendant's Sixth Amendment claim.

---

**2.** As we noted in footnote 1, appellant was not arrested until June 1994.

*Doggett,* 505 U.S. at 655, 112 S.Ct. at 2693; *Traylor,* 892 S.W.2d at 450. Courts have generally found post-accusation delay presumptively prejudicial at least as it approaches one year. *Doggett,* 505 U.S. at 652 n. 1, 112 S.Ct. at 2691 n. 1. When the government's negligence causes delay and when presumed prejudice is uncontroverted, the defendant should be afforded relief on speedy trial grounds. *Doggett,* 505 U.S. at 655, 112 S.Ct. at 2693.

■ Because the post-accusation delay in this case exceeds six years, and the delay was caused by the State's negligence in bringing appellant to trial, we conclude that the State must overcome a presumption of prejudice. Although the State contends that appellant did not provide evidence of actual prejudice, we find that appellant did not have such a burden in this case because of the protractedness of the delay and the State's negligence. *See Id.*

At the hearing, appellant claimed that documents and witnesses were lost to him and that the memory of testifying witnesses was impaired by the seven-year gap between the alleged incident and the trial. The State had to rebut these claims.

In 1987, appellant worked at the Holiday Inn. Appellant claimed that his 1987 employment records would show that he was working at the time he was supposed to have committed this offense. By 1994, however, the Holiday Inn had changed ownership and appellant's 1987 employment records were no longer available.

The management at appellant's apartment complex had also changed since 1987. By 1994, records showing the names and forwarding addresses of former tenants at the complex were no longer available.

At the hearing, the State elicited testimony from appellant that he made no attempt to contact former co-workers whom he claimed might be alibi witnesses. Appellant claimed, however, that after seven years he could not recall the names of these co-workers. The State showed, however, that employment records *might* be available through another source appellant had not investigated.

Most damaging to the State, however, is the fact that the trial court allowed it to rely on a document for which no original could be located after the delay. Over appellant's attempt to exclude, the State offered, and the trial court admitted into evidence, a statement allegedly made by the appellant to a CPS investigator. The original statement was given by CPS to the Corpus Christi police department. When both the State and the appellant requested the original, it could not be located and copies were produced from police files. This statement was not in appellant's handwriting, and a page allegedly bearing the signatures of the appellant and the CPS investigator was never found. Moreover, the copies were not clear and it was apparent that parts of sentences were not reproduced. We conclude that the State did not controvert the presumption of prejudice and that this factor also favors appellant.

We hold that the trial court erred by failing to grant appellant's motion to dismiss. We sustain appellant's first point of error. Due to our disposition on this point, we need not address appellant's remaining points of error. TEX.R.APP.P. 90(a).

We reverse the judgment of the trial court and order the prosecution of this case dismissed.