Jason Omar MORENO, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–156–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 25, 1999.

Discretionary Review Refused June 9, 1999.

Mark Alexander, McAllen, for appellant.

Theodore C. Hake, Asst. Criminal Dist. Atty., Rene Guerra, Dist. & County Atty., Rolando Garza, Asst. Dist. Atty., Edinburg, for appellee.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## OPINION

Opinion by Justice HINOJOSA.

A jury found appellant, Jason Omar Moreno, guilty of the offenses of aggravated kidnapping, aggravated sexual assault, and aggravated robbery and assessed his punishment at: (1) imprisonment for thirty-five years and a $5,000 fine for the aggravated kidnapping, (2) imprisonment for thirty-five years and a $10,000 fine for the aggravated sexual assault, and (3) imprisonment for thirty-five years and a $5,000 fine for the aggravated robbery. The trial court ordered that the three sentences run concurrently. By four points of error, appellant contends he was denied a speedy trial, the trial court erred by failing to instruct the jury in accordance with TEX.CODE CRIM. PROC. ANN. art. 38.23, the search conducted by the police officers was illegal, and the trial court erroneously allowed appellant's oral statement into evidence. We affirm.

### A. SPEEDY TRIAL

■ By his first point of error, appellant complains the trial court erred in not dismissing his case because he was denied his constitutional right to a speedy trial.

■ Criminal defendants are entitled to a speedy trial under both federal and state constitutions. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. There is no defined period of time that has been held to be a *per se* violation of a defendant's right to a speedy trial under the Sixth Amendment. *Barker v. Wingo*, 407 U.S. 514, 529–30, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Knox v. State*, 934 S.W.2d 678, 680 (Tex.Crim.App.1996); *Emery v. State*, 881 S.W.2d 702, 708 (Tex.Crim. App.1994). The following balancing test, weighing the conduct of the prosecution and the accused, has been developed by the United States Supreme Court to determine whether an accused has been denied a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) prejudice to the defendant from the delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182; *Pierce v. State*, 921 S.W.2d 291, 293 (Tex.

App.—Corpus Christi 1996, no pet.). None of the four factors involved are alone either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *Barker*, 407 U.S. at 533, 92 S.Ct. 2182; *Turner v. State*, 545 S.W.2d 133, 139 (Tex.Crim. App.1976). They must be considered together in a sensitive balancing process. *Turner*, 545 S.W.2d at 139.

■ Although the rights to a speedy trial under the Texas and United States constitutions are independent, Texas courts look to the federal courts in determining state constitutional rights. *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App.1992); *State v. Empak, Inc.*, 889 S.W.2d 618, 621 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Texas uses the *Barker* balancing test to determine whether a defendant has been denied his state speedy trial right. *Harris*, 827 S.W.2d at 956; *Melendez v. State*, 929 S.W.2d 595, 597–98 (Tex.App.—Corpus Christi 1996, no pet.).

■ The primary burden for assuring cases are promptly brought to trial lies with prosecutors and the courts. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. The defendant has the initial burden of showing sufficient delay has occurred to require application of the *Barker* balancing test. *Ramirez v. State*, 897 S.W.2d 428, 431 (Tex.App.—El Paso 1995, no pet.); *State v. Hernandez*, 830 S.W.2d 631, 635 (Tex.App.—San Antonio 1992, no pet.). Upon such a showing, the burden shifts to the State to justify the delay; the defendant then has the burden of showing his diligent assertion of the right to a speedy trial and prejudice resulting from the delay. *Ramirez*, 897 S.W.2d at 431; *Hernandez*, 830 S.W.2d at 635.

■ Because the *Barker* test presents mixed questions of fact and law,[1] this Court has determined that the first step in conducting a speedy trial review is to establish the circumstances surrounding the bringing of the case to trial (*i.e.*, date the defendant was arrested or charged; date the defendant was tried; the State's excuse for the delay; the defendant's actions in asserting his right;

---

1. *State v. Flores*, 951 S.W.2d 134, 138 (Tex. App.—Corpus Christi 1997, no pet.).

whether evidence or witnesses have been lost; whether the defendant has suffered emotionally from the wait). *State v. Flores,* 951 S.W.2d 134, 138 (Tex.App.—Corpus Christi 1997, no pet.). We conduct our review of the factual determinations with due deference to the trial court's findings. *Id.* at 139–40. Once the facts have been established, we undertake a *de novo* review of the application of the balancing test first enunciated in *Barker* to those facts. *Id.* Each case is reviewed on its own merits. *Knox v. State,* 934 S.W.2d 678, 681 (Tex.Crim.App. 1996).

### 1. *Length Of The Delay*

The facts underlying the "length of the delay" prong are undisputed. We, therefore, review the trial court's application of the law to those facts *de novo. Flores,* 951 S.W.2d at 138.

The delay in commencement of the trial must be sufficient to be presumptively prejudicial before a review of the remaining three factors is triggered. *Barker,* 407 U.S. at 531 n. 31, 92 S.Ct. 2182. The length of delay is measured from the time of arrest or formal accusation. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Harris,* 827 S.W.2d at 956. Most delays of eight months or longer are considered presumptively unreasonable and prejudicial. *Marion,* 404 U.S. at 313, 92 S.Ct. 455; *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Harris,* 827 S.W.2d at 956; *Pierce,* 921 S.W.2d at 294.

On November 16, 1994, an indictment was filed against appellant for the offenses involved in this appeal—aggravated kidnapping, aggravated sexual assault, and aggravated robbery. Appellant's trial commenced on November 7, 1996. We consider a delay of almost two years between indictment and trial to be presumptively unreasonable and prejudicial. Accordingly, we will review the remaining three factors.

### 2. *Reason For The Delay*

The State has the initial burden of justifying a lengthy delay. *Emery v. State,* 881 S.W.2d at 708. If a silent record, or one containing reasons insufficient to excuse the delay, exists, it must be presumed that no valid reason for the delay existed. *Turner,* 545 S.W.2d at 137–38. In examining the reasons for the delay, different weights should be assigned to different reasons. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State. *Id.* A more neutral reason, such as negligence or overcrowded court dockets, should be weighed less heavily, but nevertheless should be considered because the ultimate responsibility for such circumstances must rest with the State rather than with the defendant. *Id.* The State's negligence, however innocent, militates against the State. *Empak,* 889 S.W.2d at 624; *Pierce,* 921 S.W.2d at 294; *Branscum v. State,* 750 S.W.2d 892, 895 (Tex. App.—Amarillo 1988, no pet.).

It is helpful to set out a time line of this case to analyze the severe delay experienced by appellant. On November 16, 1994, appellant was formally indicted for the present offenses. On November 28, 1994, appellant was arraigned. From January to June 1995, there were continuing plea negotiations between the prosecutor and appellant's attorney. In August 1995, appellant's attorney was involved in a motorcycle accident and requested a six-month continuance. Appellant was advised that he could have another attorney represent him, but he decided to keep his present counsel. From the beginning of 1996 through March/April 1996, there were continuing discussions between the State and appellant's attorney concerning trial dates. The State tried to set the trial during "Spring Break" because the victim was a teacher. During this time, appellant's counsel was unavailable. There were attempted settings for June and July, but appellant's counsel was in federal court or on vacation. On August 20, 1996, appellant pleaded guilty to the three charges. On September 9, 1996, appellant withdrew his guilty plea. The case was called for trial on October 22, 1996, but was reset by agreement of both parties for October 28. It was called for trial on October 25, 1996, and set for a pretrial motion for October 31. On

October 31, appellant's counsel did not appear because he was in federal court, and the case was reset for November 6, 1996. On November 6, 1996, everyone appeared for trial and announced ready. Before trial commenced, the trial court conducted a speedy trial hearing.

 Appellant attributes the delays to the "system," *i.e.,* overcrowded trial dockets and conflicts that were not attributable to him. He argues that these delays should be charged against the State. While it is true that overcrowded dockets of trial courts do not excuse trial delays, and the responsibility for the situation rests with the State under *Chapman v. Evans,* 744 S.W.2d 133, 136 (Tex.Crim.App.1988), the present delay cannot be blamed on the "system."

The State contends the present situation did not result from a backlog of cases in the trial court. The State argues the delay in this case resulted from: (1) unsuccessful, but time-consuming, plea negotiations, (2) a six-month continuance requested by the defense, (3) inability of defense counsel to fit a trial date into his schedule of federal court hearings and vacation, and (4) a guilty plea by appellant.

 Because of the dispute, we will apply an abuse of discretion standard of review to this prong. *Flores,* 951 S.W.2d at 138. Under this standard, questions of law are reviewed *de novo* while substantial deference is accorded to the trial court's findings of fact. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

After a thorough review of the record, it appears the delay cannot be blamed on the State's neglect of the case, but rather on the inability of appellant's attorney to fit his client into his schedule. Appellant testified at the speedy trial hearing that in two years he never really talked to his attorney, and he only saw him four times. However, when he was told he could have new counsel, appellant stated he was satisfied with the services of his attorney and did not want new counsel.

The record reflects that the State did not neglect appellant's case, but instead made continuous attempts to set the case for trial. The unnecessary delays can only be attrib-

uted to appellant and his attorney. We conclude this factor favors the State.

### 3. *Defendant's Assertion Of His Speedy Trial Right*

Because the record reflects a dispute concerning appellant's actions or inactions in asserting his right to a speedy trial, we will apply an abuse of discretion standard of review.

 Although a defendant has no duty to bring himself to trial, nonetheless he has a responsibility to assert his right to a speedy trial. *Barker,* 407 U.S. at 527–29, 92 S.Ct. 2182. The absence of a defendant's timely demand for a speedy trial indicates strongly that he did not really want a speedy trial. *Harris,* 827 S.W.2d at 957. A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he was deprived of the right, but failure to assert the right indicates strongly that he did not really want a speedy trial. *Harris,* 827 S.W.2d at 957; *Pierce,* 921 S.W.2d at 295; *see Barker,* 407 U.S. at 531–32, 92 S.Ct. 2182. A defendant's failure to assert the right to a speedy trial diminishes the importance of the State's inability to excuse the delay. *See Barker,* 407 U.S. at 528–32, 92 S.Ct. 2182.

 A defendant's assertion of his right to a speedy trial must be viewed in light of his other conduct. *United States v. Loud Hawk,* 474 U.S. 302, 314, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *Burgett v. State,* 865 S.W.2d 594, 598 (Tex.App.—Fort Worth 1993, pet. ref'd). Although a motion to dismiss can notify the State and the court of a speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *Phillips v. State,* 650 S.W.2d 396, 401 (Tex.Crim.App. 1983).

Appellant first raised his speedy trial claim in a written motion to dismiss filed on September 27, 1996, forty days before trial. The trial court heard the motion immediately before trial commenced. The record contains letters appellant wrote to his attorney which include statements concerning appellant's de-

sire for a speedy trial. However, one of the letters raises a question about appellant's desire for a speedy trial. In the letter, appellant stated:

> I don't understand why I have not been presented in Court but if the reason is worth it and its in your strategy, can you help my case?

If appellant's attorney knew that his client wanted a speedy trial, he should have made an effort to get to court, or at least file a motion for a speedy trial.

Although not in the record, appellant claimed in his motion to dismiss that he wrote to the local newspaper, the State Bar, the court, and Texas Rural Legal Aid. Appellant's letters to the State Bar and Legal Aid concerned his frustration with the lack of communication with his attorney, and the letters to the newspaper and the court may have been about appellant's desire for a speedy trial.

The State contends the only letters in the record suggesting a desire for a speedy trial are those appellant wrote to his attorney. The State argues that a letter to a defense attorney requesting a speedy trial should not be considered a *demand* for a speedy trial because the attorney could "keep the letter buried in a file, then point to the letter and declare that his client demanded a speedy trial many months ago." The State also points to the aforementioned statement by appellant to his attorney indicating the possibility of an intentional strategy of delaying the trial.

The evidence in the record tends to make the appellant's desire for a speedy trial questionable. Even if we were to accept each of his alleged attempts to obtain a speedy trial, it does not appear that appellant exercised any diligence in asserting his right to a speedy trial.

### 4. Prejudice To The Defendant From The Delay

A defendant who invokes his right to a speedy trial is required to make some showing that the delay has been prejudicial. *Chapman*, 744 S.W.2d at 137; *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Crim.

App.1983); *Pierce*, 921 S.W.2d at 295. "Prejudice ... should be assessed in the light of the [following] interests ... which the speedy trial right was designed to protect[:] (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. In considering the prejudice factor, the reviewing court will not require proof of actual prejudice, but only some showing that the delay has been prejudicial. *See Doggett*, 505 U.S. at 657, 112 S.Ct. 2686; *Phillips*, 650 S.W.2d at 401. It is the defendant's burden to make a *prima facie* showing of prejudice. Once the defendant has met his burden, it is the State's "obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App.1973).

We will review this prong *de novo* because the State did not refute the facts asserted by appellant. The State contends, however, that appellant failed to show he suffered any prejudice from the delay.

Although on its face nearly two years of incarceration before trial is oppressive, the circumstances of this case do not establish that it was actually oppressive to the appellant. Appellant agreed to six months of the time because his attorney needed a continuance. Most of the remainder of the delay can be attributed to plea negotiations and discussions between the State and appellant's attorney and the inability of appellant's attorney to appear in court due to prior commitments.

Anyone in jail is presumptively anxious and concerned. Appellant's letters to his attorney establish that he was concerned about the status of his case. Such "concern," however, must be viewed in light of the fact that he confirmed during the pretrial speedy trial hearing that he committed this crime to be institutionalized.

The main concern is whether the defense was impaired by the delay. Appellant asserts that the delay has caused him to lose contact with witnesses. He testified at the pretrial hearing that the witnesses he is re-

ferring to are "people I got to know real good in T.Y.C., as I called it the free world, friends, people who know me personally, people I associate with." He stated that he wrote letters and that one letter was returned, a letter to Ana Castillo, a Texas Key caseworker, with whom he "counseled with about private stuff ... like we became close friends. She understood me pretty well." It appears from appellant's testimony that Ana Castillo was the only person he was unable to contact.

The State contends appellant did not provide evidence of prejudice because Ana Castillo would only have duplicated the testimony of two other witnesses presented by the defense.[2] Although it is unfortunate that appellant was unable to contact his "friends," these individuals were not relevant to this case, and appellant did not attempt to establish their bearing on the case. It appears Ana Castillo would have testified only during the punishment phase in an attempt to mitigate punishment. We agree with the State that it is likely the testimony of appellant's probation officer and Dr. A.J. Alamia concerned the same matters as those which would have been addressed by Ana Castillo.[3] Accordingly, we do not find appellant was prejudiced by the delay.

Applying the *Barker* balancing test, we hold that appellant's right to a speedy trial was not violated. Appellant's first point of error is overruled.

## B. ARTICLE 38.23 INSTRUCTION

■ In his second point of error, appellant complains the trial court erred in failing to charge the jury in accordance with article 38.23 of the code of criminal procedure. He contends a fact issue was raised concerning the authority of Rosalia Moreno, a third party, to consent to a search of appellant's bedroom.

Article 38.23(a) requires the trial court to instruct the jury to disregard evidence used against the defendant at trial if the jury

believes, or has a reasonable doubt, that the evidence was obtained in violation of the defendant's constitutional rights. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp. 1999). A trial court is required to include a properly worded article 38.23 instruction in the jury charge only if there is a factual dispute as to how the evidence was obtained. *Hamilton v. State*, 831 S.W.2d 326, 331 (Tex. Crim.App.1992); *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App.1986); *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Crim. App.1982); *Sendejo v. State*, 841 S.W.2d 856, 859 (Tex.App.—Corpus Christi 1992, no pet.).

After finding the victim's stolen car abandoned two lots from appellant's residence, the police concluded there might be information relevant to the case at the residence. Although they did not have a search warrant, four officers, three plain-clothed and one uniformed, from the various jurisdictions involved in the investigation went to the house. When the officers arrived at the house, the owner, Rosalia Moreno, answered the door. Because the woman did not speak or understand English, Officer Andres Zamora explained in Spanish who he was and that he was there investigating a case. Zamora then asked Moreno if she knew appellant. Moreno stated she was not related to appellant, but was more of a grandmother figure. She further stated appellant lived with her at the residence and that he slept in a converted washroom, but he did not pay rent. Appellant used the room as a bedroom, but Moreno had her washing machine and a lawnmower in the room. She said she had access to the room (there was no lock on the door) and entered it whenever she needed to wash clothes. Officer Zamora then asked for and received oral and written consent from Moreno to enter and search the residence for items related to this case. After the officers obtained Moreno's consent, Moreno showed the officers the room in which appellant slept. In the room and in a trash can outside the residence, the officers found items the victim had reported being in the stolen vehi-

---

**2.** The defense presented appellant's probation officer and Dr. A.J. Alamia, a professor of developmental psychology, as witnesses.

**3.** Appellant did not establish an attempt to contact Ana Castillo beyond writing a single letter. Appellant's attorney could have contacted Texas Key and possibly obtained a forwarding address for Ms. Castillo if she was a necessary witness.

cle. Thus, the search produced evidence directly linking appellant to this case.

Appellant contends a fact issue was raised concerning the authority of Moreno to give consent because the consent form exhibited the name ROSALIA MORALES instead of ROSALIA MORENO. Appellant asserts that if Moreno did not recognize the incorrect name, then she could not have given valid consent to the search. We do not agree. Officer Zamora testified it was he who mistakenly wrote the wrong name on the form. He admitted it was his clerical error. Even assuming, *arguendo*, that the written consent form was suppressed, the police still had consent to enter, because Moreno had already given oral consent for the search. *See Montoya v. State*, 744 S.W.2d 15, 25 (Tex.Crim.App.1987).

■ Appellant also asserts the officers took advantage of the advanced age[4] and illiteracy of Moreno to obtain her consent. We find no evidence in the record to support this assertion. Officer Zamora explained his reason for being at the residence, as well as the presence of the other officers, and once he found that Moreno did not speak English, he spoke to her in Spanish. Zamora testified that Moreno cooperated with the officers during the search. In addition, almost one month after the search, Moreno found some audiotape cassettes[5] that did not belong to her or appellant (nor anyone in the house) and turned them over to Zamora. Moreno's cooperation and independent willingness to aid the investigation establishes that the officers did not take advantage of her.

We conclude appellant raised no fact issue concerning Moreno's consent for the jury to decide. We hold the trial court did not err by denying appellant's request for an article 38.23 jury instruction. Appellant's second point of error is overruled.

## C. CONSENT TO SEARCH

In his third point of error, appellant contends the trial court erred in not granting his motion to suppress the evidence obtained from the search of the residence.[6] He argues that because the officers did not have valid consent, the evidence obtained should be considered the fruit of an illegal search.

A search conducted without a warrant based on probable cause is *per se* unreasonable. *Juarez v. State*, 758 S.W.2d 772, 775 (Tex.Crim.App.1988); *Henson v. State*, 915 S.W.2d 186, 193 (Tex.App.—Corpus Christi 1996, no pet.). An exception to the warrant and probable cause requirements is a search that is conducted pursuant to consent. *Garcia v. State*, 887 S.W.2d 846, 851 (Tex.Crim. App.1994). A third party may properly consent to a search when he has control over and common authority to use the premises being searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974);[7] *Becknell v. State*, 720 S.W.2d 526, 528 (Tex.Crim.App.1986) (a third party may properly consent to a search when he has equal control over and equal use of the premises being searched). An oral consent to search is valid. *Montoya*, 744 S.W.2d at 25.

■ The State, when relying on an executed consent to search form in the ab-

---

4. Moreno was 84 years old at the time of the search.

5. Some of these audiotape cassettes belonged to the victim.

6. The search of the residence produced items that matched the list of personal belongings present in the vehicle when it was stolen. In the converted washroom, the officers found: the owner's manual and bill of sale for the vehicle with the victim's name on each, various pens, pencils, and highlighters, and a cellular phone battery eliminator. In a trash can located outside the residence, the officers found: a lady's sandal, sales receipts from Wal–Mart and Gateway, a picture frame, a card, 35mm film, and a

bottle of lotion. We will not consider the items found from the search of the trash can because Moreno unquestionably could consent to the search of her own trash can.

7. Common authority is defined in footnote 7 of *Matlock* as "resting on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Matlock*, 415 U.S. 164, 171–72 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

sence of a search warrant, must produce clear and convincing evidence that the consent was voluntarily given. *Paulus v. State*, 633 S.W.2d 827, 850 (Tex.Crim.App.1982) (on motion for rehearing); *Smith v. State*, 797 S.W.2d 243, 246 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Cammon v. State*, 672 S.W.2d 845, 849 (Tex.App.—Corpus Christi 1984, no pet.). Whether consent was voluntary is determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Fancher v. State*, 659 S.W.2d 836, 839 (Tex.Crim.App.1983); *Rumbaugh v. State*, 629 S.W.2d 747, 751 (Tex.Crim.App. 1982); *Cammon*, 672 S.W.2d at 849.

A warrantless search performed pursuant to consent by a third party is valid if "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Brimage v. State*, 918 S.W.2d 466, 481 (Tex.Crim.App.1996). The State bears the burden of proving that the officers were objectively reasonable in their belief that the person who gave consent had the authority to do so. *Rodriguez*, 497 U.S. at 181, 110 S.Ct. 2793; *Riordan v. State*, 905 S.W.2d 765, 771 (Tex.App.—Austin 1995, no pet.). The burden cannot be met if officers, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the officers do not learn enough, if the circumstances make it unclear whether the property is subject to "common authority" by the person giving consent, "then warrantless entry is unlawful without further inquiry." *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. 2793.

■ When the officers spoke with Moreno, they learned she owned the house, that she felt pity for appellant and allowed him to sleep in her washroom, but she still maintained access to the room. Appellant did not pay rent to live there, and Moreno used the room to wash clothes and store some items. From this discussion, it was reasonable for Officer Zamora to determine that Moreno had authority to consent to the search. This was not an ambiguous situation. Moreno had equal control over and use of the room. Moreno's consent was also voluntary, given her willingness to help the officers and turn over evidence she found after the search. Clearly, appellant's privacy expectation was diminished by the fact that Moreno had access to the room. Appellant "assumed the risk" that Moreno, with whom he shared the use of the converted washroom, might consent to a police search of the room. *See Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

We hold Moreno had valid authority to consent to the search of appellant's room. Accordingly, the evidence found as a result of the search is not the fruit of an illegal search. Appellant's third point of error is overruled.

### D. ADMISSION OF APPELLANT'S ORAL STATEMENT

In his fourth point of error, appellant complains the trial court erred in allowing into evidence an oral statement made by him to the police while he was in custody for an unrelated theft charge. Appellant contends the statement relates to an extraneous offense, it was hearsay, and the prejudicial effect outweighed its probative value.

On August 3, 1994, Officer Leal with the San Benito Police Department arrested appellant for theft. While appellant was in custody and after he had been read the *Miranda* [8] warnings, Officer Leal attempted to obtain appellant's name for identification purposes. After giving various false names and birth dates, appellant finally gave his correct name. When Officer Leal ran appellant's name through the computer system, he discovered that appellant had outstanding warrants for his arrest. Officer Leal then advised appellant that he had some warrants. Appellant responded, "Are they for rape or something like that?" Officer Leal then asked if there should be, and appellant responded he was just joking. At trial, Officer Leal was allowed to testify about this exchange in the presence of the jury, but the trial court limited his testimony by excluding evidence concerning the theft.

**8.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant initially argues that the statement is hearsay and should not have been admitted into evidence. Rule 801(e)(2)(A) provides that "a statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity." Tex.R. Evid. 801(e)(2)(A). We conclude the statement is not hearsay because it was offered against appellant and it was appellant's own statement.

Appellant next contends the statement is about an extraneous offense. Evidence concerning an extraneous offense may be admitted if it meets a two-part test: (1) the extraneous offense must be relevant to a material issue in the case, and (2) the probative value of the evidence must outweigh the prejudicial effect. *Montgomery v. State,* 810 S.W.2d 372, 377 (Tex.Crim.App.1991); *Madden v. State,* 911 S.W.2d 236, 243 (Tex.App.—Waco 1995, pet. ref'd).

We review the admission of evidence concerning the oral statement made by appellant to Officer Leal under an abuse of discretion standard. *Montgomery,* 810 S.W.2d at 392. As long as a trial court's ruling is within a "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App.1997) (citing *Rachal v. State,* 917 S.W.2d 799, 807 (Tex. Crim.App.1996)).

We must first determine whether the statement is relevant. For relevancy, we must determine whether the proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be. Tex.R. Evid. 401; *Montgomery,* 810 S.W.2d at 391. We conclude appellant's statement is relevant because it tends to corroborate the testimony of the victim concerning the occurrence of the sexual assault. Since the rape kit performed on the victim was found to be inconclusive, appellant's statement is material evidence supporting the allegations of the victim.

We must next determine whether the prejudicial effect of appellant's statement outweighs its probative value. Rule 403 of the rules of evidence provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403. In keeping with the presumption of the admissibility of relevant evidence, there is a presumption that relevant evidence is more probative than prejudicial. *Santellan,* 939 S.W.2d at 169; *Montgomery,* 810 S.W.2d at 389. Because appellant's counsel made the necessary rule 403 complaint at trial, the trial court had to "weigh the probativeness of the evidence to see if it is substantially outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence." *Santellan,* 939 S.W.2d at 169.

The record reflects that after balancing these factors, the trial court determined Officer Leal's testimony before the jury should be limited. The trial judge cured the possibility that the jury might view appellant as a "criminal" by not allowing Officer Leal to testify concerning the theft. Officer Leal only testified he had appellant at the police station and that he was trying to ascertain appellant's identity. By limiting Officer Leal's testimony, the trial court diminished the statement's prejudicial effect.

We conclude the probative value of Officer Leal's testimony concerning appellant's statement substantially outweighed the statement's prejudicial effect. We hold the trial court did not abuse its discretion in allowing appellant's oral statement into evidence. Appellant's fourth point of error is overruled.

The judgment of the trial court is AFFIRMED.