

# NUMBER 13-18-00384-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LANCE TAYLOR,                                                                            Appellant,

v.

THE STATE OF TEXAS,                                                                  Appellee.

### On appeal from the 28th District Court
### of Nueces County, Texas.

## OPINION ON REMAND

### Before Chief Justice Contreras and Justices Longoria and Tijerina
### Opinion on Remand by Justice Tijerina

Appellant Lance Taylor challenges his convictions for one count of murder and one count of tampering with evidence, both sentenced as first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 19.02, 37.09. Taylor was sentenced to confinement for life for both

offenses.[1] By one issue, Taylor contends that because his right to a speedy trial was violated, the trial court improperly denied his motion to dismiss. *See* U.S. CONST. amend. VI. On original submission, we affirmed the cause and held that we were unable to address Taylor's speedy trial claim because the trial court had not held a meaningful speedy trial hearing, and therefore, we could not sufficiently analyze the *Barker* factors. *Taylor v. State*, 655 S.W.3d 478, 485 (Tex. App.—Corpus Christi–Edinburg 2022) (stating "here we are unable to apply the *Barker* factors as the trial court did not conduct a meaningful hearing on the speedy trial motion"), *rev'd* 667 S.W.3d 809, 810 (Tex. Crim. App. 2023); *see Barker v. Wingo*, 407 U.S. 514, 530 (1972). The Texas Court of Criminal Appeals reversed and vacated our judgment holding that no meaningful hearing was necessary because the record was sufficient for us to analyze some of the *Barker* factors. *Taylor*, 667 S.W.3d at 810. The Court instructed us to analyze the *Barker* factors as set out in the record. *See id.* We affirm.

## I.     PERTINENT FACTS

Taylor was arrested on June 20, 2016, for the offenses of murder and tampering with evidence. During the pendency of Taylor's trial court cause, the trial court held several status hearings, and Taylor remained in jail for the entirety of the proceedings.

At one of these status hearings held on February 2, 2017, Taylor stated that a previous trial date had been continued and that he had "invoked" his "speedy trial rights." Taylor's trial counsel explained, "I believe [it was] the first setting in the case and *we both needed more time*. The [S]tate needed more time and defense needed more time and it

---

[1] Taylor was charged as a repeat felony offender. *See* TEX. PENAL CODE ANN. § 12.42.

2

was *by agreement*." (Emphasis added). The trial court informed Taylor that there was now a trial setting for March 27, 2017.

On February 27, 2017, Taylor filed a pro se motion for a speedy trial, stating that he had been in jail since June 20, 2016, that he had informed his trial counsel that he desired a speedy trial, and that he had "invoked his desire" for a speedy trial on September 15, 2016, when he was formally indicted. Taylor requested that the trial court accept his pro se motion for a speedy trial despite being represented by trial counsel. Taylor did not request a hearing on his motion for a speedy trial. There is no ruling on this motion in the record.

On March 16, 2017, the State filed a motion for continuance on the basis that it was not ready for trial "because the DNA evidence that is crucial to this case is not ready." The State asked for a continuance of the March 27 trial setting and requested a ninety-day reset of the trial.

On March 29, 2017, Taylor's trial counsel filed a motion for speedy trial requesting that "trial in this case be scheduled as soon as possible." The motion states that Taylor had been arrested on June 17, 2016, and a trial had not yet been set. Taylor asserted without any supporting facts that he would be "prejudiced" if his motion was not granted. No hearing was requested or held, and there is no ruling on this motion in the record.

The trial court held a status hearing on May 1, 2017, where Taylor's trial counsel stated that it was "fine" to set the cause for a status hearing in another thirty days. Taylor's trial counsel said, "I did file some motions and I don't need a hearing on them right now except for two maybe. I filed a motion to appoint a co[-]counsel, and I filed a motion for

3

an investigator. I don't think the State would oppose that." The State replied that it did not oppose.[2] Taylor then asked if he could be heard stating, "Just please. I need to say to speak for the record. It's overwhelming. Where's my speedy trial? My Constitutional rights are being violated freely." Taylor's trial counsel said, "[Taylor, y]ou got a parole hold either way. All right. So just stop."[3] The trial court did not set a trial date at this hearing.

On June 1, 2017, at a "status hearing," Taylor's trial counsel requested a trial "setting sometime in mid-August" due to needing to review a voluminous record that he received from the State. Taylor's trial counsel said, "It's a lot of paper and I haven't gone through all of it, Judge." The trial court set the trial for August 14, 2017, with both sides agreeing that they were available. The trial court set the docket call for August 10, 2017, at 1:30 p.m.

The trial court held a status hearing on August 3, 2017, where Taylor's trial counsel informed the trial court that Taylor was ready for trial. The State stated that it intended to announce ready for trial.

On August 8, 2017, the State filed a motion for continuance because an "essential witness," Ray Fernandez, M.D., would be out of town the week of the trial. The motion stated the following: "The undersigned has conferred with the attorney for [Taylor] and said attorney does not oppose this continuance."

On Thursday, August 10, 2017, at a status hearing, the State announced that it

---

[2] The record supports a conclusion that the State did not oppose either motion.

[3] Neither party clarified the meaning of a "parole hold." Nonetheless, in its brief, the State explains that this statement by defense counsel "indicates that Taylor was being held in jail not only for the present murder, but also on a parole warrant."

was not ready for trial and informed the judge that it had filed a motion for continuance but that another judge was considering the motion. Taylor's trial counsel stated that he preferred that a ruling be made on this date. However, the judge stated that she would not "overrule" the judge who was considering the motion and that she had indicated that "[s]he wanted to hear [the motion] on Monday." The State informed the judge that the parties were "trying to work" with the judge considering its motion in an attempt to "set up a conference call where maybe [they could] get a decision today." The parties did not receive a decision on that date.

Subsequently, on August 14, 2017, the judge who was considering the State's motion for continuance held a hearing on the State's motion for continuance. Taylor's trial counsel stated that although the motion for continuance was not "initially" a joint motion, "then we started working on an expert on cell phone data, and the next available date our expert would not be ready. So I suppose at this point it is a joint motion." The trial court said that the trial was "tentatively" set for October 23, 2017. The trial court informed Taylor that he would have to "wait in jail a little bit longer" and asked, "Do you understand that?" Taylor replied, "Yes, ma'am." The trial court then signed an order granting the State's motion for continuance and resetting the trial for October 23, 2017.

On October 19, 2017, the trial court called the case, and the State informed the trial court that it had filed a motion for continuance because a vital witness had "disappeared." Taylor's trial counsel said, "Your Honor, we would oppose any reset. We are ready. The State has asked for a continuance on every setting since this case has started, and this is just another request for a continuance . . . . We would ask the court to

5

deny their motion." The State claimed that it had requested only one reset due to Dr. Fernandez's unavailability. The trial court pointed out that Taylor had been in jail for 486 days and that "we have 100 jurors coming next week and we have the [fifth] floor already reserved for next week." The trial court doubted that they would be able to "pull 100 jurors or have the fifth floor available" for Taylor's case "because it takes time. And we are reaching very close to 500 days." The trial court denied the State's motion for continuance.

On October 23, 2017, the State filed a verified motion for continuance stating that although the trial had been set that day, "[t]he State is unable to be ready for trial . . . because an essential witness . . . cannot be located and served with a subpoena." Taylor's defense counsel argued that "the appropriate thing to be done right now is for the [S]tate to dismiss. Mr. Taylor has been in custody quite a long time. I don't know how long they want to keep Mr. Taylor in custody when they don't have their witnesses." Taylor's defense counsel opined that the State would not be prejudiced by dismissal and that it would be able to refile the case when it located its witness. The trial court granted the continuance and signed an order resetting the trial for December 4, 2017.

On November 17, 2017, at a hearing, the State informed the trial court that it had located its missing witness, Kevin Miller, that Miller had been deliberately avoiding the State, that the deputies had served him with a subpoena, and that he was now willing to cooperate with the State. The trial court granted a writ of attachment and set a hearing for the following Monday, November 20, 2017, to determine its next step to ensure Miller's

6

appearance at Taylor's trial. The record shows that the trial court ordered Miller to wear a GPS monitor until his appearance at the trial.

At a November 30, 2017 status hearing, the State and defense announced ready for trial. However, Taylor's trial counsel notified the trial court that Taylor had just had nasal surgery, was bleeding from his nose, and would be taken to the hospital for treatment. Subsequently, the trial court reset the trial for January 8, 2018.

On December 4, 2017, the trial court held a status hearing wherein Taylor asked that his appointed counsel be replaced and requested to proceed pro se. Taylor complained that he had yet to "see" discovery, he had "been coerced to take time," his trial "[c]ounsel refuse[d] to cooperate," and his trial counsel did not "respond" to Taylor's letters or to his mother. Taylor stated that he was comfortable representing himself. The State objected to Taylor's motion to proceed pro se.

Both of Taylor's trial attorneys informed the trial court that they had prepared for the case and were ready for trial. One of the attorneys informed the trial court that Taylor was not prepared to represent himself stating, "He needs some help. He needs somebody to help him along, or just start all over again and he has been in jail a year and a half." Taylor replied that he would be prepared to move forward pro se. The trial court warned Taylor that if he replaced the currently appointed trial counsel, there would have to be another postponement of the trial. The following exchange then occurred:

| [Taylor]: | I understand that. There has been six postponements since my speedy trial motion in January. I understand that. |
| [Trial Court]: | And because it is your request to postpone this trial, your speedy trial is moot. |

7

| | |
|---|---|
| [Taylor]: | I'm not asking for any other continuance, Judge. I'm just asking for justice. I don't want a miscarriage of justice. |
| [Trial Court]: | Well, you cannot have a new attorney be ready for January on a murder case. |
| [Taylor]: | Well then I will do it myself, Judge; that is unfortunate. I'm innocent. |
| [Trial Court]: | You just said that you are not even mentally or physically ready. |
| [Taylor]: | So where does that leave me, Your Honor? |
| [Trial Court]: | So, I don't understand you— |
| [Taylor]: | I know it is a very hard dilemma. I made an executive decision, Judge. I have no other options. I have no other options. |

After discussing the possibility of allowing Taylor access to police reports, the trial court took the matter under advisement.

At a status hearing on December 6, 2017, Taylor asked the trial court to allow him to represent himself at trial because he had a conflict with his appointed attorneys. Taylor clarified that he would like appointment of new counsel, but if no new counsel could be appointed, he would then proceed pro se.

The trial court asked, "Well, do you understand that if I do grant your request, then your trial more than likely will be postponed again?" Taylor responded, "Yes, ma'am. I am aware of that fact. It has been postponed several times." The trial court asked Taylor's trial counsel how long he believed newly appointed counsel would need to prepare. Taylor's trial counsel said, "Well, Judge, it was delayed because we were waiting for DNA

evidence and different delays that don't exist now. But I would think the fastest this case would be ready to go to trial, if someone new starts is four months, three to four months." The following conversation occurred:

| [Trial Court]: | Do you understand that? |
| --- | --- |
| [Taylor]: | Yes ma'am, I do. |
| [Trial Court]: | So that means an additional three or four months in jail. |
| [Taylor]: | Unfortunately, yes. Added to the 18 months, yes ma'am. |
| [Trial Court]: | So that is what you want? |
| [Taylor]: | That is what I need at this point, Judge, to avail myself. |
| [Trial Court]: | All right. Then the Court will appoint new counsel. |
| [Taylor]: | Thank you. |

Taylor's original trial counsel filed a motion to withdraw, which the trial court granted. The trial court appointed new trial counsel, and pretrial matters were heard on February 16, 2018, wherein Taylor's newly appointed trial counsel stated that he needed a new trial date because he was "not prepared to go forward," as he had "just been handed the full [autopsy] report." Taylor's new trial counsel informed the trial court that he was also "just trying to clear up a *Brady* issue regarding whether they [the State] had an additional report that would assist us in preparing that motion to exclude his testimony." Taylor's trial counsel said, "So at this point I'm going to rest this point until we have further hearing on the issues with the doctor." New counsel then asked for recess of the matter and "maybe having a resetting for additional evidentiary matters." The State agreed to the request and informed the trial court that the agenda for the day called for setting a trial

9

date.

The trial court proceeded to calendar a new trial setting. Taylor's trial counsel informed the trial court that he told Taylor that they could "potentially do something in May." The State agreed. Miller's counsel had scheduling issues, and the trial court accommodated his schedule by setting the trial for May 7, 2018. Taylor's trial counsel said, "We can shoot for that, Your Honor."[4]

Trial on the merits commenced on May 22, 2018, after which the jury convicted Taylor of the charged offenses. This appeal followed.

## II.    APPLICABLE LAW & STANDARD OF REVIEW

A defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, § 10 of the Texas Constitution. U.S. CONST. amend. 6; TEX. CONT. art. 1, § 10; *see State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021). We determine whether a speedy trial violation occurred on an "ad hoc basis" by considering the following four "*Barker* factors": (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *Lopez*, 631 S.W.3d at 113. To that effect, we must conduct "a difficult and sensitive balancing process," wherein the conduct of both the prosecutor and the defendant must be weighed. *Barker*, 407 U.S. at 533; *see State v. Reyes*, 162 S.W.3d 267, 268 (Tex. App.—San Antonio 2005, no pet.).

"The defendant's burden of proof on the latter two [*Barker*] factors 'varies inversely'

---

[4] The trial was not held on May 7, 2018. The parties do not identify any location within this voluminous record establishing the exact reason for this final rescheduling of the trial, and we are unable to locate any hearing or order resetting the trial in the record.

with the State's degree of culpability for the delay." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81. The State prevails by justifying the length of delay while a defendant prevails by proving the assertion of the right and showing prejudice. *Id.* at 280.

We must not apply a "wooden application" of the *Barker* factors because "dismissal of the charges is a radical remedy" and such an application "would infringe upon 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Id.* at 281. Accordingly, we "must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when *the evidence* shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* (emphasis added). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

The standard of review we apply to a trial court's decision on a motion for speedy trial is bifurcated. *Lopez*, 631 S.W.3d at 113. Factual findings are reviewed for an abuse of discretion, and legal conclusions are reviewed de novo. *Id.* at 113–14.

### III.   DISCUSSION

By his sole issue, Taylor contends that the "undue delay" of his trial "warrants dismissal of the indictment on speedy trial grounds." The State responds that Taylor failed to preserve his appellant complaint "by neglecting to file a motion to dismiss or otherwise ask the trial court to dismiss for a speedy trial violation."

11

**A.    Preservation**

We agree with the State that Taylor did not file a motion to dismiss at trial, and he did not request the trial court to dismiss the indictment on the basis that his right to a speedy trial had been violated. *See* TEX. R. APP. P. 33.1(a)(1) (providing that an issue is not preserved if the defendant did not make the trial court aware of it). Additionally, the trial court did not grant Taylor's motion for a speedy trial; therefore, it implicitly found that no violation had occurred. Accordingly, under these circumstances, we cannot conclude that the trial court erred when he failed to dismiss the cause sua sponte. *See State v. Robles*, 631 S.W.3d 870, 875 (Tex. App.—San Antonio 2021, no pet.) ("To the extent the trial court's order intended to specify Robles's right to a speedy trial as a basis for the dismissal, Robles never asserted his constitutional rights to a speedy trial or sought dismissal on speedy trial or due process grounds.").

**B.    *Barker* Factors**

Moreover, presuming that the trial court resolved any disputed fact issues in the State's favor, deferring to the implied findings of fact that the record supports, and after balancing the *Barker* factors, we conclude that no speedy trial violation occurred here. *See Barker*, 407 U.S. at 533. In other words, even assuming that Taylor preserved this issue, the trial court did not err in declining to dismiss the case.

**1.    Length of Delay, Reasons for the Delay, and Assertion of Right**

First, the State concedes, and we will assume without deciding, that the length of delay here mitigates in Taylor's favor and is long enough to trigger an analysis of the other

*Barker* factors.[5]  *See id.*

Next, as to the reasons for the delay and Taylor's assertion of his right to a speedy trial, many of the delays were caused by Taylor after he invoked his right to a speedy trial. Thus, although Taylor invoked his right, his conduct was inconsistent with someone who wished to go to trial expeditiously. *See Moreno v. State*, 987 S.W.2d 195, 200 (Tex. App.—Corpus Christi–Edinburg 1999, pet. ref'd) ("A defendant's assertion of his right to a speedy trial must be viewed in light of his other conduct." (first citing *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986); then citing *Burgett v. State*, 865 S.W.2d 594, 598 (Tex. App.—Fort Worth 1993, pet. ref'd))). Additionally, the State's reasons for delay were due to the complexity of the case, which Taylor acknowledged and also cited as a reason for the trial court to continue the cause. *See Loud Hawk*, 474 U.S. at 316 ("There is no showing of bad faith or dilatory purpose on the Government's part."); *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) (concluding that the trial court had not erred by denying the appellant's motion for a speedy trial because, among other things, the delay was not "extraordinary given the complexity of the prosecution's case against [the] appellant" even though the State had not made that argument to the trial court). In addition, the State alleged that it needed continuances due to witnesses who were not

---

[5] When Taylor filed his motion for a speedy trial, there had been a delay of approximately sixteen-months. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); *see also Thomas v. State*, No. 12-22-00073-CR, 2023 WL 4682317, at *3 (Tex. App.—Tyler July 21, 2023, no pet. h.) ("Because approximately sixteen months passed between Appellant's arrest and his trial, he satisfied the threshold showing of delay, and the State admits that this factor weighs against it." (first citing *Jimerson v. State*, 629 S.W.3d 569, 575 (Tex. App.—Tyler 2021, no pet.); then citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); and then citing *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014))).

13

available to testify. *See Loud Hawk*, 474 U.S. at 316. During the trial settings discussing the continuances, the State informed the trial court that Taylor had agreed to some of those continuances, and in fact eventually had "joined" one motion that he initially challenged. Therefore, these factors weigh against Taylor. *See Moreno*, 987 S.W.2d at 200; *Burgett*, 865 S.W.2d at 597 ("In fact, a defendant may be disentitled to the speedy trial safeguard when he has or shares responsibility.") (citing *Dickey v. Florida*, 398 U.S. 30, 48 (1970)). Nonetheless, even assuming that the State's reasons for the delay were not excused, Taylor's requests for several continuances thereafter is evidence that Taylor did not want a speedy trial. *See Cantu v. State*, 253 S.W.3d 273, 284 (Tex. Crim. App. 2008) ("Under *Barker*, appellant's failure to diligently and vigorously seek a rapid resolution is entitled to 'strong evidentiary weight.'"); *Moreno*, 987 S.W.2d at 200.

### 2. Prejudice

> When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. Of these types of prejudice, the last is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."

*Cantu*, 253 S.W.3d at 285 (citing *Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003).

Taylor's statement at the May 1, 2017 status hearing that "[i]t's overwhelming" indicates that Taylor may have suffered from some general anxiety from the delay. However, when Taylor stated that he was overwhelmed, his trial counsel told him to "stop" and reminded him that he was in jail on a parole hold—implying that Taylor would not be

released from jail even if the trial court granted his motion for a speedy trial.[6] *See Mendez v. State*, 212 S.W.3d 382, 386 (Tex. App.—Austin 2006, pet. ref'd.) (recognizing in its discussion whether the appellant was prejudiced from pretrial delay that, though the appellant was continuously incarcerated following his arrest, "he was also being held on a parole revocation warrant and thus would have been in custody in any case"). There is no evidence that Taylor's anxiety exceeded the level normally associated with a criminal charge. *See id.* at 286 ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation.").

Finally, though Taylor generally claimed that he would be prejudiced if the trial court did not grant his motion for a speedy trial, he never stated that his defense had been impaired by the delays in this cause. *See id.* at 285; *see also Moreno*, 987 S.W.2d at 201 ("It is the defendant's burden to make a *prima facie* showing of prejudice."). Taylor presented no evidence at any of the hearings that he had been prejudiced by the delay, and he kept requesting his own continuances of the case. *See id.* At the December 6, 2017 hearing, Taylor appeared to acknowledge that he had not been prejudiced by the delays in his case by requesting to represent himself and stating that he wanted to wait an additional three or four months in jail "to avail" himself. *See Moreno*, 987 S.W.2d at 200.

---

[6] A parole revocation warrant, also known as a "blue warrant" or a "parole hold," is an arrest warrant issued by the Texas Board of Pardons and Paroles when a parolee is suspected of violating the conditions of his parole. *See Bd. of Pardons & Paroles ex rel. Keene v. Court of Appeals for the Eighth Dist.*, 910 S.W.2d 481, 482 (Tex. Crim. App. 1995); *see also Heard v. State*, 280 S.W.3d 419, 421 n.1 (Tex. App.—Fort Worth 2009, pet. ref'd); *see* also *Reeders v. State*, No. 03-04-00022-CR, 2005 WL 2240968, at *1 n.1 (Tex. App.—Austin Sept. 14, 2005, pet. ref'd) (mem. op., not designated for publication).

In our de novo review of the trial court's ruling, we conclude that the evidence supports the trial court's implicit denial of Taylor's speedy trial claim and that it would not have erred in denying a motion to dismiss. Therefore, as a matter of law, Taylor was not denied his Sixth Amendment right to a speedy trial. *See Cantu*, 253 S.W.3d at 286. We overrule Taylor's sole issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
24th day of August, 2023.

16