NUMBER 13-99-796-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________ 


SYLVIA MARTINEZ , Appellant, 



v.

 
THE STATE OF TEXAS , Appellee. 

___________________________________________________________________ 


On appeal from the 197th District Court

of Cameron County, Texas.

____________________________________________________________________ 


O P I N I O N

Before Justices Dorsey, Castillo, and Cantu(1)

Opinion by Justice Cantu

 

Appellant, Sylvia Martinez, was indicted on March 26, 1997 for the offense of theft (welfare fraud). The State alleged that
pursuant to a scheme and continuous course of conduct, occurring between May 9, 1996 and September 28, 1996, appellant
had obtained medicaid and food stamp benefits and aid to families with dependent children benefits through deception, i.e.
by failing to disclose that she was employed during the time she received the benefits. 

 Appellant was not arrested until August 30, 1999, almost thirty months after the return of the indictment. On September
13, 1999, she filed a motion to dismiss based on a violation of her right to a speedy trial. The trial court denied the motion
and appellant, thereafter, entered a guilty plea. Adjudication was deferred and appellant was placed on community
supervision for a period of three years. In a single contention, appellant now appeals the trial court's denial of her motion to
dismiss. We affirm. 

 During 1996, appellant, claiming to be unemployed, filled out an application and applied for benefits from the Texas
Department of Human Services (hereinafter Department). As a result of the application being approved, appellant received
assistance for a number of months. Thereafter, while receiving benefits, appellant obtained temporary employment with
Wolverton Realty assisting with the agency's bookkeeping. Subsequently, appellant was interviewed by an investigator for
the Department about her employment with Wolverton and a statement was obtained from appellant. No further action was
taken by the State until March 26, 1997, when an indictment was returned by a Cameron County Grand Jury. A post
indictment bond was set at $5,000.00 on April 4, 1997 and a capias and precept were issued on April 7, 1997. No further
action appears of record(2) until August 18, 1999 when a notice of arraignment was mailed to appellant at 1150 E. Adams,
Brownsville, Texas 78520 c/o the Community Development Corporation of Beeville. The notice advised appellant to
appear for arraignment on September 2, 1999. On August 27, 1999 appellant appeared at a designated place where she
executed a pretrial bond, requested a court appointed attorney and advised the court that she had already consulted with an
attorney. At that time she provided an address of 591 N. Milam, San Benito, Texas 78586. The request for
court-appointed attorney was approved by the trial court on August 30, 1999, the same day appellant was technically
arrested and served with a copy of the indictment. Appellant was not, however, processed through jail.(3)

 On September 2, 1999, appellant, with counsel, appeared for arraignment and entered her plea of "not guilty", obtained an
announcement setting for October 1, 1999 and a trial on the merits setting for October 4, 1999. On September 13, 1999
appellant filed her motion to dismiss, which was heard on October 5, 1999. 

 Appellant provided the only testimony presented to the trial court. According to appellant, she was first made aware of the
indictment when she received notice of a pending arraignment by mail delivered to her place of employment the latter part
of August of 1999. She claimed that she was very embarrassed because up to this point she was totally unaware of any
pending charges against her. 

 Appellant stated that she had been living in the Port Isabel and Laguna Heights area since March of 1997, but that she had
recently moved to San Benito. She claimed a life-long permanent mailing address of Box 5205, Port Isabel, Texas 78578,
which she insisted was the same address as 1637 North Shore Drive. She also claimed addresses at 618 Michigan Street
and 1100 Highway 100 in Laguna Heights for a portion of the period immediately prior to moving to San Benito. During
this period appellant was pursuing child support assistance through the Attorney General's Office and was receiving child
support payments through the District Clerk's Office. She also had her minor child enrolled with the Cameron County
Indigent Health Care program. Appellant vehemently denied ever trying to evade law enforcement in anyway. 

 Appellant remembered applying with the Department in 1996 for benefits but denied having word for word recollection of
the event. She recalled receiving benefits for a short time but claimed her memory had faded because she tended to put
those things behind her. 

 During cross-examination appellant demonstrated clear recollection of why she had made application for assistance in the
first place and admitted that examining the application would help refresh her memory. She had no problem recalling her
employment with Wolverton Realty and receiving payment by checks, but insisted that she was temporary help and not a
full-time employee. 

 Although appellant could not recall the name of the investigator with the Department, she clearly remembered the incident
involving the investigation. 

 The State did not offer any testimony at the hearing. However, the trial court commented after denying the motion: 

 The Court:....When this court took office, when I became judge of the 197th, none of these cases had been arraigned at all.
The court had not set any of them down for any type of hearing. So it's not like we have a case in which the person was
arraigned and then failed to appear and nothing was done to procure the appearance of the person. 

 When I first came on board, after I had been here for a while, then I reviewed to see what cases this court was behind on.
All of these cases then came to light. On none of them had the court set them down for arraignment at all. I do not know
why the court did not set them down. I just know that once I set them down for arraignment, then the people received
notice, and they all came in. So based on that, apparently it was the court's problem or the court's mistake in not setting
these down at all, and it had nothing to do with the prosecution. But I do not know why the prior judge, the prior court did
not set them. 



 Appellant expressly invoked her right to a speedy trial under both the State and Federal Constitutions as well as under
Article 1.05 of the Texas Code of Criminal Procedure. The right to a speedy trial is guaranteed by the Sixth Amendment as
applied to the states by the Fourteenth Amendment. Barker v. Wingo, 407 U.S.514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972);Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575,
21 L.Ed. 2d 607 (1969); Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In addition, Article I,
sec. 10 of the Texas Constitution guarantees the accused in all criminal prosecutions the right to a speedy public trial. See
also, Article 1.05, Tex. Code Crim. Proc.. Although the Texas and Federal rights to a speedy trial are separate and distinct,
interpretation and application of the Sixth Amendment right to a speedy trial by the Federal courts has served as a useful
guide to the interpretation of the Texas constitutional right to a speedy trial by Texas courts. See Chapman v. Evans, 744
S.W.2d 133 (Tex.Crim.App. 1988);Pierce v. State, 921 S.W.2d 291, 293 (Tex.App.-Corpus Christi 1996, no pet.). 

 In determining whether an accused was denied her right to a speedy trial, we apply the balancing test set out by the United
States Supreme Court in Barker v. Wingo, 407 U.S. at 530-33. The factors we consider are: (1) the length of the delay; (2)
the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the
delay. See id. No single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation, and these
factors "must be considered together with such other circumstances as may be relevant." Id. This balancing test requires
that we conduct a bifurcated assessment of the trial court's decision. We review the factual components for abuse of
discretion and the legal components of the court's decision de novo. See State v. Munoz, 991 S.W.2d 818, 821
(Tex.Crim.App.1999) 

LENGTH OF DELAY 

 The defendant has the burden of first demonstrating that sufficient delay has occurred to require application of the Barker
balancing test. See Johnson v. State, 975 S.W.2d 644,649 (Tex.App.-El Paso 1998, pet ref'd.). The length of delay for
purposes of speedy trial analysis is generally measured from the time a defendant is arrested or formally charged until the
time of trial. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Harris v. State, 827 S.W.2d
949, 956 (Tex.Crim.App.1992), cert. denied, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). There is no per se
length of delay that automatically constitutes a violation of the right to a speedy trial. Hull v. State, 699 S.W.2d 220, 221
(Tex.Crim.App. 1985) The length of delay must be examined on a case by case basis, Chapman, 744 S.W.2d at 136 and
constitutes our first inquiry. See Barker, 407 U.S. at 530, 92 S.Ct. 2182. A finding of a "presumptively prejudicial" delay is
a necessary precursor to our inquiry into the remaining Barker factors. Doggett v. United States, 505 U.S. 647, 652, 112
S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing Barker, 407 U.S.at 530-31, 92 S.Ct. 2182); "Presumptive prejudice" does not
"necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay
unreasonable enough to trigger the Barker inquiry." State v Munoz, 991 S.W.2d at 821-22 (citing Doggett, 505 U.S. at 652
fn.1, 112 S.Ct. at 2691,fn.1, 120 L.Ed.2d at 528 fn.1 (1992). Texas courts have generally found a delay beyond eight
months to be presumptively prejudicial, thus triggering further analysis of speedy trial claims. See Harris v. State, supra at
956; Knox v. State, 934 S.W.2d 678, 681 (Tex.Crim.App.1996) 

 Almost thirty months passed between the return of the indictment and appellant's technical arrest. We believe this is a
sufficient length of time to require a speedy trial inquiry. 

REASON FOR THE DELAY 

 Once the defendant has demonstrated "presumptive prejudice" the initial burden of justifying a lengthy delay is upon the
State. See Turner v. State, 545 S.W.2d 133, 137-38 (Tex.Crim.App. 1976); Emery v. State, 881 S.W.2d 702, 708
(Tex.Crim.App. 1994). 

 Both the trial court and prosecution are under a positive duty to prevent unreasonable delay. See Chapman v. Evans, supra.
at 137. 

 Intentional prosecutorial delay should weigh heavily against the State in the analysis. More "neutral" reasons for delay
such as negligence or overcrowded court dockets are also weighed against the State, although not to the same extent. See
Barker, 407 U.S. at 531d, 92 S.Ct. at 2182. Neutral reasons such as negligence or overcrowded courts shall be weighed
less heavily against the State, "but nevertheless shall be considered, because the ultimate responsibility for such
circumstances must rest with the government rather than the defendant." Id. In examining the delay, different weight
should be assigned to different reasons. Emery, 881 S.W.2d at 708. A record that is silent or containing insufficient reasons
to excuse the delay gives rise to a presumption that no valid reason for delay exists. Lott v. State, 951 S.W.2d at 493. 

 Here the reason for the delay is unknown because the State proffered no explanation for the delay. Moreover, the State
made no effort to explain why the arrest warrant issued on April 7, 1997 was not executed until August 30, 1999. Nor is
there any indication that Cameron County took any steps to contact appellant even as she participated in county sponsored
programs. These circumstances weigh against the State and in favor of the appellant. 

 At the end of the evidentiary hearing, the trial court attempted to justify the delay by shifting the blame to the predecessor
court's administration. Presumably the outgoing court's personnel negligently failed to set the judicial process in motion for
a number of cases after indictments were returned. We treat the trial court's explanation as a neutral reason weighed against
the State because ultimately responsibility, for even neutral reasons, rests with the State. We conclude that the delay should
be attributed to the State alone. 

ASSERTION OF THE RIGHT

 The third factor under Barker is the defendant's assertion of the right to a speedy trial. Appellant's assertion of her speedy
trial right is entitled to strong evidentiary weight in determining whether she was deprived of the right. See Barker, 407
U.S. at 531-32, 92 S.Ct. at 2182. Conversely, a failure to assert the right in a timely and persistent manner indicates that she
did not really want a speedy trial. See Emery, 881 S.W.2d at 709. In such a case, this factor must be weighed against the
defendant. See Sinclair v. State, 894 S.W.2d 437, 440 (Tex.App.-Austin, 1995, no pet.). The record is clear that the only
pretrial action taken by appellant was her appearance for arraignment, the obtaining of a trial date and the filing of her
motion seeking dismissal of the case for denial of a speedy trial. Clearly appellant never sought a speedy trial, as her
actions demonstrate only the desire to obtain a dismissal. The State argues, and we agree, that this failure to request a
speedy trial tends to attenuate the strength of appellant's claim. See Phillips v. State, 650 S.W.2d 396, 401
(Tex.Crim.App.1983). However, a defendant has no duty to bring himself to trial. See Barker, 407 U.S. at 527. The
primary responsibility rests with the courts and prosecutors to assure that cases are brought to trial. Id. at 529. Because
appellant was unaware that she had been indicted for over 29 months, she can hardly be blamed for not earlier asserting her
right to be afforded a speedy trial. Cf. Pierce v. State, 921 S.W.2d at 295. ( A defendant cannot be penalized for invoking
his speedy trial right only after arrest.); State v. Perkins, 911 S.W.2d 548, 553 (Tex.App.-Fort Worth 1995, no pet.) (A
defendant has no burden to demand a speedy trial at his arrest or before he learned about his arraignment date.).(4) An
accused cannot be faulted for failing to assert a right he did not know he was entitled to. See Phillips, 650 S.W.2d at 400.
We assess appellant's assertion of the right to a speedy trial in light of her total conduct. See Burgett v. State, 865 S.W.2d
594, 598 (Tex.App.-Fort Worth 1993, pet. ref'd). 

 In the instant case appellant filed her motion seeking dismissal barely eleven days after obtaining counsel and being
arraigned. Considering that the State waited almost thirty months to arrest the appellant, her assertion of her right to a
speedy trial can hardly be criticized as untimely. The third Barker factor weighs heavily in favor of the appellant. 

PREJUDICE TO THE APPELLANT

 The final Barker factor to consider is prejudice to the accused. The prejudice factor must be assessed in the light of the
interests of defendants which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration;
(2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.
SeeHarris v. State, 827 S.W.2d at 957. Of these subfactors, "the most serious is the last, because the inability of a
defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532-33, 92 S.Ct. at
2193-94. 

 A defendant has the burden to make some showing of "prejudice" although a showing of "'actual prejudice'' is not
required.See State v. Munoz, 991 S.W.2d at 826 (citing Harris v. State, 489 S.W.2d at 308. When the defendant makes a
"prima facie showing of prejudice," the State carries "'the obligation of proving that the accused suffered no serious
prejudice beyond that which ensued from the ordinary and inevitable delay.'" Id. (citing Ex parte McKenzie, 491 S.W.2d
122, 123 (Tex.Crim.App. 1973) 

 Appellant was never incarcerated following her technical arrest. Therefore, there was no oppressive pretrial incarceration.
She offered no evidence that she had suffered either anxiety or concern other than a feeling of embarrassment upon
receiving notice of her pending arraignment at her place of employment. 

 Appellant testified that her memory concerning the events of the offense had faded to the point that she did not have any
recollection of what information she had included in her application for benefits and, therefore, she could not tell whether
her application had been altered. Moreover, she claimed to have no recollection of the names of either the Department
investigator that interviewed her and took her statement or the state employee that took her application for benefits. 

 Under cross-examination appellant admitted remembering making application for benefits and receiving them for a short
period. She recalled being unemployed at the time of the application and subsequently accepting temporary work at
Wolverton Realty while receiving benefits. She further remembered doing bookkeeping for the agency and being paid with
agency checks, although insisting that she was never actually an employee subjected to employee deductions. She agreed
that the cancelled checks would assist her in establishing dates and amounts earned. Appellant further acknowledged that
examination of the application would assist her in recalling details not otherwise remembered. She had no problem
remembering the purpose of the interview with the Department's investigator, but insisted she could not recall his name.
She claimed no recollection of the statement she gave, but again acknowledged that an examination of the instrument
would prove helpful. Additionally, appellant disclosed that the whereabouts of the owner of the Wolverton Realty, Judy
Wolverton, was not a problem because Wolverton had been her landlord the past three years. 

 Appellant offered no evidence that the availability of any potential witnesses was compromised as a result of the delay. In
fact, she failed to mention the existence of any defensive witnesses. 

 It is clear from the testimony presented to the court that appellant's contemplated defense merely denied the existence of an
employer-employee relationship. Our examination of her entire testimony does not support the conclusion that her lack of
memory prejudiced her defense to any degree. The record does not disclose that appellant's attorney conducted any
meaningful pretrial discovery prior to the hearing in an effort to ameliorate any harm from memory loss. However, at the
oral arguments on submission of the case on appeal, counsel admitted that he had full access to the State's file under an
open file policy. An examination of the stipulated evidence subequently admitted at the guilty plea clearly demonstrates
that much of the memory loss was not inevitable and that discoverable documentary evidence was available to assist
appellant in reconstructing any of the claimed concerns she expressed at the hearing. Cf. Harlan v. State, 975 S.W. 2d 387,
391 (Tex.App.-Tyler 1998, pet ref'd.) 

CONCLUSION

 Balancing the factors set forth in Barker v. Wingo, the weight tilts substantially against appellant's assertion of a violation
of her constitutional right to a speedy trial. A dismissal by the trial court was not warranted. Appellant's sole issue before
this court is overruled. We affirm the judgment of the trial court. 

ANTONIO G. CANTU

Justice 



Do not publish. Tex. R. App. P. 47.3. 

Opinion delivered and filed this the 

12th day of April, 2001. 





1. Senior Justice Antonio G. Cantu assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. §74.003 (Vernon 1998).

2. [2] During the hearing on appellant's motion to dismiss, counsel requested that the trial court take judicial notice of the
court's entire file. We draw some of the facts from the same documents brought to the court's attention.

3. [3] Appellant testified that she had not spent any time in jail as a result of the arrest.

4. [4] Although it can be argued that appellant should have made her demand for a speedy trial at the arraignment, she cannot
be faulted for failing to do so inasmuch as she was not afforded court- appointed counsel until the very date of arraignment.