**MODIFY, REFORM, and AFFIRM; and Opinion Filed July 3, 2018.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00933-CR

**TIFFANIE BROOK ANDERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from Collin County Court at Law No. 3**
**Collin County, Texas**
**Trial Court Cause No. 003-86125-2013**

# MEMORANDUM OPINION

Before Justices Bridges, Brown, and Boatright
Opinion by Justice Boatright

Appellant was convicted of driving while intoxicated. On appeal, she argues that the State violated her constitutional right to a speedy trial and that the evidence was legally insufficient to support her conviction. The State argues that the trial court's judgment should be affirmed but modified to reflect that appellant was convicted of a Class B, rather than Class A, misdemeanor. We affirm the trial court's judgment as modified.

## Background

On the evening of April 25, 2013, Morey Schrader was the front seat passenger in a vehicle driven by his wife in Plano, Collin County, Texas. Mr. Schrader's daughter was a passenger in the backseat. While the Schraders were stopped at a red light, appellant rear-ended their vehicle. None of the Schraders were injured, but their vehicle was totaled. Mr. Schrader and appellant got out of their vehicles. Appellant walked up to Mr. Schrader, hugged him, and asked that they not call the

police. When Mr. Schrader told her that the police had already been called, appellant went back to her vehicle saying that her husband was going to kill her. Appellant returned to the Schraders' vehicle and showed Mr. Schrader her divorce papers. She also told him repeatedly that she was sorry. Then appellant said that she had to pick up her child from daycare. She got back in her vehicle, backed up, drove around to the side of the Schraders' vehicle, and started to pull forward, but the light turned red again and she stopped.

While she was stopped at the light, paramedics arrived. Appellant told them she had been drinking and that she was not injured. Around this time, Plano Police Officer Eric Seed got to the scene. While paramedics evaluated the Schraders, appellant got out of her vehicle and fell to the ground. She laid there with her eyes open, looking around. Paramedics asked her questions about her condition, but she did not speak. They decided to take her to a hospital. Plano Police Officer Gregory Williams arrived when appellant was in an ambulance and the paramedics were preparing to take her to the hospital. He decided to follow her to the hospital.

During the drive to the hospital, appellant began yelling and tried to hit the paramedics. To calm her down, they gave her a dose of nasal Versed. At the hospital, appellant pushed nurses and yelled at them. They put her in restraints after she tried to bite one of the nurses. Officer Williams told her to calm down. Appellant asked him to hold her hand; he did, and she calmed down. But when Officer Williams started to ask her questions about the crash, she became uncooperative and verbally abusive.

On September 24, 2013, the Collin County District Attorney charged appellant by information with driving while intoxicated. She learned about the charge against her three years later, when she was arrested on December 18, 2016. She was tried on June 19, 2017.

**Speedy Trial**

Appellant argues that the length of time between the evening of the crash and the day she learned that she had been charged with driving while intoxicated violated her right to a speedy trial

under the Sixth Amendment to the U.S. Constitution and article I, section 10, of the Texas Constitution.

We use a four-part analysis to determine whether the State violated appellant's right to a speedy trial. *Zamorano v. State*, 84 S.W.3d 643, 647–48 (Tex. Crim. App. 2002) (citing *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972)). We weigh the strength of each factor and balance the relative weight of each in light of the conduct of each party. *Id*. at 648. No factor is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. *Id*. Instead, the factors must be considered together along with other relevant circumstances. *Id*. We use a bifurcated standard of review: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal ones. *Id*.

*1. Length of Delay*

The first part of the analysis is whether the delay before trial was uncommonly long. *Id*. If it was too long, we consider the other three factors, but, if it was not too long, we end our analysis at the first step, *id*., and conclude that the State did not violate appellant's right to a speedy trial. Generally, delay of about one year between the time a defendant is charged and tried is considered uncommonly long. *State v. Thomas*, 453 S.W.3d 1, 4 (Tex. App.—Dallas 2014, no pet.). The State concedes that the thirty-eight months that elapsed between the crash and her arrest was too long. The case law guiding our analysis shows that it was. Accordingly, we will now consider the other three factors.

*2. The Reason for the Delay*

The second factor is whether the prosecution or defendant is more to blame for the delay. *Zamorano*, 84 S.W.3d at 648. A deliberate attempt to delay the trial in order to hamper the defense is weighted heavily against the government, while a more neutral reason such as negligence or overcrowded courts is weighted less heavily. *Id*. at 649. The State bears the initial burden of

providing a justification for the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994).

The State argues that appellant caused at least part of the delay. As the State notes, Officer Williams testified that he asked appellant at the hospital whether the address on her driver's license was correct, but she refused to answer, then insulted him. And when he asked her a second time, she refused and insulted him again. She never confirmed that the address on her driver's license was correct. Consequently, the record shows that it was appellant's fault that law enforcement initially did not know what her correct address was.

Appellant's refusal to confirm or deny that the address on her driver's license was her correct address likely made apprehending her more difficult. If she actually lived at that address, law enforcement could have apprehended her there regardless of whether she had confirmed that she did, but when appellant was eventually arrested, she entered an address on her bond that was different from the one on her license. This is the only record evidence of where she lived prior to her arrest—during the thirty-eight month period that, she says, constituted the denial of her right to a speedy trial—and it indicates that she did not live at the address on her license. Therefore, her refusal to confirm that she lived at the address on her license amounted to a refusal to provide her address altogether. In this way, the record indicates that appellant's refusal to answer Officer Williams's question contributed to the delay in locating her, notifying her that she had been charged, and arresting her.

The Texas Court of Criminal Appeals has held that a delay attributable in whole or in part to the defendant may constitute a waiver of her speedy-trial claim. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). The Court's use of the word "may" rather than "must," however, suggests that appellant might be able to assert her speedy-trial claim even though she was at least partly responsible for the delay. *See* TEX. GOV'T CODE ANN. § 311.016(1) (providing that "must"

grants permission), (2) (providing that "shall" imposes a duty). Accordingly, we will consider whether, and to what extent, the delay might also be attributable to the State.

Appellant contends that the delay was caused by the State's negligence. She cites *Phillips v. State*, 650 S.W.2d 396 (Tex. Crim. App. 1983), to support her claim. In *Phillips*, the prosecution had the correct address for the defendant on file, but did not try to find and arrest him at that address for over a year. *Id*. at 399–400. The Court held that this was negligence. *Id*. at 400.

In our case, appellant's counsel asserted at trial that she had lived at the address on her driver's license for the "entire time period." As in *Phillips*, appellant argues, the State had ready access to the information sufficient to arrest her—the address on her driver's license—but failed to act on it.

The State responds by pointing to the fact that the address appellant entered on her bond was different from the one to which it would have had ready access, the address on her license. Unlike *Phillips*, where the State admitted that it had the defendant's correct address on file, the only evidence in our case regarding appellant's correct address indicates that, prior to her arrest, she lived at an address different from the one the State could readily access. Therefore, *Phillips* does not support appellant's contention that the State was negligent.

Nevertheless, appellant argues that the differing addresses should not have been an impediment to apprehending her. She contends that the address she gave when she was arrested—an address in Rockwall County, which borders Collin County—shows that she "was living or residing in an area that is close in proximity to Collin County." Appellant does not explain why this might be significant; millions of people live close to Collin County, and the possibility that she might have been one of them would not appear to help her argument. In any event, she notes that the Collin County Sheriff's Office received her arrest warrant in 2013, and contends that no "evidence was presented by the State on the efforts made by the Collin County Sheriff's Office to

locate Appellant or the difficulties the Sheriff's Office encountered in arresting Appellant that may explain the more than three-year delay in arresting Appellant."

The State responds by citing evidence showing that law enforcement officers entered her arrest warrant information into a database that would have alerted Texas law enforcement agencies that she had an open warrant for arrest. The State also cites evidence that officers were sent to arrest appellant in January 2014, and that her arrest warrant was canceled and re-entered in the database in August of that year. This rebuts appellant's claim that there is no evidence that the State tried to apprehend her. Similarly, the evidence that appellant refused to confirm her address, and that law enforcement sent officers to arrest her in January 2014 but failed, rebuts her claim that there is no evidence that law enforcement encountered difficulties in trying to arrest her.

None of this, however, is evidence that the delay was solely attributable to appellant's conduct, or that the State did enough to apprehend her. As the State concedes, it had a duty to use due diligence to locate appellant under *State v. Jones*, 168 S.W.3d 339, 347–48 (Tex. App.—Dallas 2005, pet. ref'd). The State also concedes that maintaining a suspect's name in a database does not, in itself, show diligent investigation, citing *Lott v. State*, 951 S.W.2d 489, 495 (Tex. App.— El Paso 1997, pet. ref'd). Although maintaining information "takes on added significance" in a case where a "diligent active investigation continued for a reasonable time after the offense," *id*., the State does not argue that attempting to arrest appellant in January 2014, and re-entering the warrant in a database later that year, constituted a diligent search for appellant.

Instead, the State asserts that "the trial court could have reasonably inferred that Appellant's differing addresses caused the delay—in full or in part—by making it difficult for law enforcement to locate and arrest her." The evidence in this case does indeed support the conclusion that appellant's conduct made it more difficult to locate her and, in turn, to apprehend her. However, the State does not explain how appellant's conduct could have prevented law

–6–

enforcement from trying to apprehend her for the thirty-five months that passed between the attempt to arrest her in January 2014 and her arrest in December 2016.

The State concedes that, if it did not fully explain how appellant's differing addresses accounted for the delay in apprehending her, the delay should be attributed to the State's negligence and weigh slightly against the State. Accordingly, the briefing and record in this case indicate that appellant contributed to the delay by refusing to provide her address, and that the State contributed to the delay by failing to maintain a diligent effort to locate and apprehend her. We will weigh these reasons for delay against one another. *Munoz*, 991 S.W.2d at 822.

When we do, we notice that appellant's conduct was deliberate and the State's was not. We think deliberate conduct should weigh more heavily against a party than negligent conduct. *See Zamorano*, 84 S.W.3d 648 (requiring that courts weigh the relative weight of each factor in a speedy trial analysis in light of the conduct of each party). We also infer that appellant's deliberate conduct likely contributed to the State's negligent conduct by making her apprehension more difficult. Weighing appellant's deliberate conduct against the State's negligence, and inferring that appellant's deliberate conduct likely contributed to the State's negligence, we conclude that appellant was more to blame for the delay than the State was. The second factor weighs against appellant.

*3. Defendant's Assertion of the Right to a Speedy Trial*

Appellant had the responsibility to assert her right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). She cites facts that, she says, show that she adequately asserted her right: 1) she first learned about the charges against her when she was arrested on December 18, 2016; 2) her initial court appearance was on January 13, 2017; 3) she filed a motion for speedy trial on May 11, 2017; and 4) she set the case for trial on May 12. However, she does not explain how these facts support her speedy-trial claim.

The State argues that appellant's actions were inconsistent with what would be expected of someone who wanted a speedy trial. For example, appellant filed her motion for speedy trial at the same time she filed her motion to dismiss. As the State points out, the Court of Criminal Appeals has held that, if "a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Cantu*, 253 S.W.3d at 283. Appellant, however, has not attempted to provide any reason for her failure to file a motion for speedy trial before she filed a motion to dismiss.

The State also notes that her case was passed three times—once in January and twice in April—without her objection. The fourth setting was for May 12. Appellant filed her motion for speedy trial the day before, on May 11. Appellant's motion objected only to the delay in apprehending her; it did not object to any of the three resets. On May 12, the case was passed a fourth time, to June 19, again without appellant's objection. She does not contend that she opposed any of the four resets, nor did she press her speedy-trial claim after the May 12 reset. "Repeated requests for a speedy trial weigh heavily in favor of the defendant," the Court of Criminal Appeals has held, "while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*

Thus, appellant asserted her right to a speedy trial, but she did so in a way that can support two inferences: first, that she was at least as interested in avoiding a trial as she was in having one; or second, that she was at least as interested in delaying a trial as in having one quickly. Accordingly, the third factor weighs against the State, but not as heavily as it would have weighed if appellant had demonstrated that she actually wanted a speedy trial.

*4.) Prejudice to the Defendant*

Appellant had the burden to make "some showing" of prejudice. *Munoz*, 991 S.W.2d at 826. If she made that showing, the burden would shift to the State to prove that she suffered no serious prejudice beyond what ensued from the ordinary and inevitable delay. *Id.* We evaluate

prejudice to appellant in light of her interests to 1) prevent oppressive pretrial incarceration, 2) minimize her anxiety and concern, and 3) limit the possibility that her defense will be impaired. *Id*. Of these, the third is the most important. *Id*. Appellant does not argue that she suffered oppressive incarceration and anxiety, but she does contend that her defense was impaired.

In support of her contention, she points to her trial counsel's assertion that she was at a restaurant prior to the crash that was no longer in business, and that she was unable to locate witnesses who may have observed her behavior there. In order to amount to "some showing" of prejudice, appellant must show that 1) those witnesses are unavailable, 2) their testimony might be material and relevant to her case, and 3) she exercised due diligence in her attempt to find and produce them for trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973). However, appellant presented no evidence regarding any of those requirements. Nor did her counsel attempt to explain how the witnesses' testimony would be material and what steps he took to find and produce them for trial. Therefore, appellant did not make the required showing that she suffered prejudice from the delay.

Nevertheless, appellant suggests that she did not have to make any showing of prejudice, because there is a presumption of prejudice when the State's negligence causes a very long delay. In support of her argument, she cites *Pierce v. State*, 921 S.W.2d 291, 296 (Tex. App.—Corpus Christi 1996, no pet.), which held that a post-accusation delay of six years that was caused by the State's negligence created a presumption of prejudice. The delay in our case, however, was much less than six years. And in cases which involved periods of delay closer to the one in ours, the Court of Criminal Appeals found a presumption of prejudice where the delay was attributable to the State rather than the defendant. For example, in *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003), the Court found a presumption of prejudice in a three-and-a-half year delay that the State offered no reason to justify. Similarly, in *Zamorano*, 84 S.W.3d at 650, the Court determined there was a presumption of prejudice in a four-year delay that was attributable only to

the State's negligence. Appellant has cited no case, and we have found none, indicating that a delay caused mostly the accused's conduct can create a presumption of prejudice.

Because appellant failed to cite evidence that witnesses were unavailable, that their testimony might be material and relevant to her case, and that she exercised due diligence in her attempt to find and produce them for trial, she has failed to make "some showing" of prejudice as the law requires. *Harris*, 489 S.W.2d at 308. Nor did appellant contend that the delay caused her anxiety or oppressive pretrial incarceration. And because the delay in arresting her was attributable to her conduct, she has failed to establish a presumption of prejudice. *Zamorano*, 84 S.W.3d at 650. The fourth factor weighs against her.

*Balancing the Four Parts of the Speedy Trial Analysis*

The first and third factors—the length of the delay and the assertion of her right to a speedy trial—weigh against the State. The second and fourth—responsibility for the delay and prejudice to appellant—weigh against appellant. Before attempting to balance the four factors, we observe that the U.S. Supreme Court has held that they are related to one another and must be considered together with other relevant circumstances. *Barker*, 407 U.S. at 533.

When we consider the factors together, we see that the length of delay—one of the factors weighing against the State—was largely appellant's fault. Therefore, one of the factors weighing against appellant—the reason for the delay—reduces the weight of one of the factors weighing against the State. In this way, the four factors are not evenly divided between the State and appellant, two versus two; they weigh in the State's favor, two-and-a-fraction versus one-and-a-fraction. Tipping the scale even further in the State's favor is our conclusion that one of the factors weighing against the State—appellant's assertion of her speedy-trial claim—did not weigh heavily, because appellant demonstrated that she was as interested in dismissing the case, or delaying the trial, as she was in having the trial quickly.

Consequently, we conclude that appellant has not established that the State violated her constitutional right to a speedy trial. We overrule her first issue.

**Legal Sufficiency of the Evidence**

Appellant was convicted of operating a motor vehicle in a public place while intoxicated, which is a violation of Texas Penal Code section 49.04(a). At trial, the State had to prove three elements of the offense beyond a reasonable doubt: 1) the defendant operated a motor vehicle on or about April 25, 2013 in Collin County, 2) in a public place, 3) while intoxicated—lacking the normal use of mental or physical faculties by reason of the introduction of alcohol.

Appellant does not dispute that she was driving in Collin County in a public place on April 25, 2013. Instead, she argues that there is no affirmative evidence showing that she was intoxicated and that, if she were intoxicated, that she was intoxicated from the introduction of alcohol. In support of her argument, she points out that the record does not include video footage of appellant at the scene of the crash. She also note that appellant did not take a field sobriety test and that there were no breath or blood test results.

However, appellant does not cite legal authority anywhere in her analysis. We have found none supporting the notion that the State had to present affirmative evidence that she was intoxicated from drinking alcohol. As the State contends, a conviction for driving while intoxicated may be based solely on circumstantial evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

The State points to several pieces of circumstantial evidence that support appellant's conviction. For example, Officer Williams testified that appellant emitted a moderate odor of alcohol and that she told him she had been drinking. Based on his experience and his encounter with appellant, Officer Williams testified that he believed she was impaired. Officer Seed testified that appellant had watering eyes and slurred speech. He also testified that her keys were on the hood of her vehicle and that, while she was sitting inside the vehicle, she repeatedly tried to reach

through the intact windshield to grab them. Officer Seed also determined that appellant failed to control her speed and that this contributed to the crash. Based on his years of training and experience, he concluded that she did not have normal use of her mental and physical faculties; and based on her actions at the scene, he concluded that she was intoxicated. The State also points out that a paramedic, David Armstrong, testified that appellant smelled of alcohol and that she told the paramedics she had been drinking.

As the State contends, appellant's slurred speech, erratic driving and behavior, and her admission of when and how much alcohol she consumed would logically raise an inference that she was intoxicated at the time of driving. *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). And Officer Seed's conclusion, drawn from his years of experience and his observation of appellant, that appellant was intoxicated is sufficient to establish the element of intoxication. *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979).

Appellant does not address any of that evidence. Instead, she points to other evidence and suggests that appellant might not have been intoxicated by alcohol. Appellant notes that, although Officer Williams testified that appellant was impaired, he could not tell to what extent she was impaired or what caused her impairment. Appellant also suggests that the Versed paramedics administered to her, not alcohol, might have made her appear impaired to Officer Williams. And appellant notes that, although Mr. Armstrong testified that appellant was impaired, he could not determine how impaired she was, or what substance had made her impaired. Appellant also draws our attention to the fact that Mr. Schrader testified that he did not smell alcohol on appellant even when she hugged him.

That evidence does indeed show that not all evidence points to the conclusion that appellant was intoxicated on alcohol. However, not all evidence has to point directly and independently to her guilt in order for the evidence to be legally sufficient. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). The jury is the sole judge of the weight and credibility given to witness

–12–

testimony, and it is within the sole province of the jury to resolve any conflicts between them. *Id*. The cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id*.

Here, the State pointed to evidence of many incriminating circumstances: appellant admitted that she had been drinking before the accident; one police officer and a paramedic testified that she smelled of alcohol; and another police officer testified that her speech was slurred, her driving was impaired, her behavior was erratic, and she was intoxicated. The cumulative force of these incriminating circumstances could have convinced the jury beyond a reasonable doubt that appellant was intoxicated by reason of the introduction of alcohol. Reviewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), we conclude that the jury's verdict was rational and that the evidence presented actually supports the conclusion that appellant committed the offense. *Brooks v. State*, 323 S.W.3d 893, 899–900 (Tex. Crim. App. 2010). We overrule appellant's second issue.

We note in passing that the State also argued that much of the evidence in this case—that appellant did not want to call the police, she tried to leave the scene, refused to confirm her address, and behaved erratically—supports the conclusion that she had a consciousness of guilt, which courts sometimes find indicative of guilt itself. *Cueva v. State*, 339 S.W.3d 839, 881–82 (Tex. App.—Corpus Christi 2011, pet. ref'd). Having concluded that there is sufficient evidence showing that she was intoxicated by reason of the introduction of alcohol, we need not address whether she thought she was guilty of a crime.

**Modification of the Judgment**

The State argues that the judgment should be modified to show that appellant was convicted of a Class B misdemeanor rather than a Class A misdemeanor. As the State contends, the trial court's charge instructed the jury on a Class B misdemeanor, and the jury found the appellant guilty as charged. The trial court's judgment, however, stated that appellant was guilty of "Driving While Intox W/bac >=0.15," which would be a violation of Penal Code section

49.04(d), a Class A misdemeanor. We modify the judgment to provide that she was found guilty of a Class B misdemeanor under Penal Code section 49.04(b), a Class B misdemeanor. TEX. R. APP. P. 43.2(b).

## CONCLUSION

We affirm the trial court's judgment as modified.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

170933F.U05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TIFFANIE BROOKE ANDERSON,
Appellant

No. 05-17-00933-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 3, Collin County, Texas
Trial Court Cause No. 003-86125-2013.
Opinion delivered by Justice Boatright.
Justices Bridges and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We delete the provision that states: It is therefore ORDERED, ADJUDGED and DECREED that the defendant is guilty of the misdemeanor offense of Driving While Intox W/bac>=0.15 committed on this the 25th day of April, 2013, as charged in the Information.

We add the following provision: It is therefore ORDERED, ADJUDGED and DECREED that the defendant is guilty of the Class B misdemeanor offense of driving while intoxicated, committed on this the 25th day of April, 2013.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 3rd day of July, 2018.

–15–